## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LIBERIAN COMMUNITY ASSOCIATION OF CONNECTICUT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | No.: 3:16-cv-00201-AVC |
| GOVERNOR DANNEL MALLOY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | February 16, 2016 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO CERTIFY CLASS AND APPOINT CLASS COUNSEL

### INTRODUCTION

Since October 2014, Defendants Malloy, Pino, and Mullen have engaged in a pattern and practice of subjecting Ebola-asymptomatic travelers from Ebola-affected countries in West Africa to unlawful and unjustified quarantines upon their return to Connecticut. Although scientific evidence and expert guidance make clear that asymptomatic individuals cannot transmit Ebola, Defendants imprisoned eight of the Plaintiffs in their homes without justification, adequate notice, a fair process to challenge their confinements, or provision of food and other basic supplies. Defendants continue to assert their power to order and implement scientifically unjustified quarantines and maintain a quarantine policy and practice violates state and federal law, including the U.S. and Connecticut constitutions.

Plaintiffs Liberian Community Association of Connecticut, Louise Mensah-Sieh, Nathaniel Sieh, Laura Skrip, Esther Yalartai, Bishop Harmon Yalartai, and Dr. Mary Jean O (collectively, "Class Plaintiffs") ask the court to certify a class of all individuals who will travel or intend to travel from Liberia, Sierra Leone, and Guinea ("Ebola-affected countries") to

Connecticut and are at risk of Defendants Malloy and Pino subjecting them to an unlawful and scientifically unjustified quarantine, pursuant to Defendants' quarantine policies and practice.

Certifying this class is appropriate because it satisfies all class action prerequisites under Fed. R. Civ. P. 23(a). The proposed class also meets the requirements of Fed R. Civ. P. 23(b)(2). The class is sufficiently numerous that joinder is impracticable. The putative class presents common questions of law and fact, including whether the Defendants' quarantine policies and practice violates their civil and constitutional rights. Like all class members, the Class Plaintiffs are current and planned future travelers who will return to Connecticut from Ebola-affected countries. Therefore, their claim for relief is typical of the class they seek to represent. With the assistance of the experienced counsel Class Plaintiffs have retained, they are able to fairly and adequately protect the interests of the class.

Certification of the putative class is also appropriate under Rule 23(b)(2) because 1) Defendants have acted or refused to act on grounds that apply generally to the class; and 2) the Class Plaintiffs seek declaratory and injunctive relief for the class, specifically under 42 U.S.C. § 1983, the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. §294 (2012).

## FACTS

It is firmly established that "[w]hen considering a motion for class certification, courts should consider the allegations in the complaint as true." *Matyasovszky v. Hous. Auth.*, 226 F.R.D. 35, 39 (D. Conn. 2005) (citing *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978)). However, a court may consider material outside the pleadings in determining the appropriateness of class certification. *See Sirota v. Solitron Devices, Inc.*, 673

F.2d 566, 571 (2d Cir. 1982) ("[The District Court must] develop a sufficient evidentiary record from which to conclude that the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met."); *Kaczmarek v. IBM*, 186 F.R.D. 307, 311 (S.D.N.Y. 1999)); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.") The facts set forth in this memorandum are, except where noted and included in the accompanying declaration, those alleged in the Complaint.

**2014 Ebola Crisis**

On March 23, 2014, the World Health Organization ("WHO") announced an outbreak of Ebola in West Africa. After the first confirmed case in March 2014, Ebola spread rapidly throughout Guinea, Liberia, and Sierra Leone. Complaint, ECF No. 1 ("Cmplt.") ¶ 18.

Ebola is caused by infection of one of the species of the virus. It is transmitted by direct physical contact with the bodily fluids of a symptomatic person, the body of a person who has died from Ebola, or objects contaminated with the virus, such as used needles. Ebola cannot be spread through environmental exposure (e.g. air, water) as is possible with other infectious diseases, such as tuberculosis and cholera. Symptoms include fever, headache, joint and muscle aches, diarrhea, and vomiting. The incubation period (the time from infection to onset of symptoms) is usually four to nine days but can range from two to twenty-one days. Cmplt. ¶ 19.

By fall 2014, doctors were diagnosing hundreds of new cases each week in West Africa. Over the twenty-two months of the epidemic, there were more than 28,000 cases of Ebola in these three countries and more than 11,000 deaths. Cmplt. ¶ 20.

In response to the epidemic, thousands of volunteers from around the world traveled to Guinea, Liberia, and Sierra Leone to provide critical medical assistance and share other forms of

technical expertise. Community organizations, including Plaintiff LCAC, and churches run by Liberian immigrants in the United States, like those of Plaintiff Bishop Yalaratai, raised funds to support humanitarian aid for Liberians confronting the crisis. Cmplt. ¶ 21.

**Recent Ebola Cases in West Africa and the High Likelihood of Future Ebola Outbreaks**

After an extraordinary effort by healthcare workers from West Africa and around the world, the 2014 Ebola epidemic in West Africa is currently under control. Declaration of Michael J. Wishnie dated February 15, 2016 (hereafter "Wishnie Decl."), at ¶ 11 & Ex. A. ("Detecting and breaking every chain of transmission has been a monumental achievement...So much was needed and so much was accomplished by national authorities, heroic health workers, civil society, local and international organizations and generous partners.") However, according to public health experts, future Ebola outbreaks in Liberia, Guinea, or Sierra Leone are highly likely, and there is a risk of another large Ebola crisis. Cmplt. ¶ 38.

On January 14, 2016, the WHO cautioned that Guinea, Liberia, and Sierra Leone "remain at high risk of additional small outbreaks of Ebola, like the most recent one in Liberia. To date, 10 such flare-ups have been identified that were not part of the original outbreak." Wishnie Decl., at ¶ 11 & Ex. A.

In the WHO Director-General's January 25, 2016 address to the WHO Executive Board, the Director-General stated:

> On 14 January, WHO declared that the outbreak in Liberia, the last country reporting cases, was over, but warned that the risk of further flare-ups would persist. The warning was well-founded. The next day, Sierra Leone confirmed its first new case since September of last year...The Ebola virus is stubborn. I have no doubt that further flare-ups will occur.

Wishnie Decl., at ¶ 12 & Ex. B.

**Defendants' Quarantine Policies and Practice**

Defendant Malloy declared a public health emergency in response to the Ebola outbreak

abroad on October 7, 2014 ("Emergency Declaration"). Cmplt. ¶ 26.  Pursuant to Conn. Gen. Stat. §19a-131a, this Emergency Declaration authorized the Commissioner of the Connecticut Department of Public Health to issue quarantine orders for individuals traveling from Ebola-affected countries. *Id.* To issue such an order, the Commissioner must have "reasonable grounds to believe" an individual or group is "at reasonable risk of having a communicable disease," that the individual or group poses a significant threat to the public health, and that quarantine is the "least restrictive alternative" for protecting the public health.  Conn. Gen. Stat. §19a-131b.

In October 2014, Defendant Mullen, as authorized by Defendant Malloy, ordered at least three quarantines covering eight people: one order for Plaintiff Ryan Boyko, one order for Plaintiff Laura Skrip, and one order for Plaintiffs Louise Mensah-Sieh, her minor children B.D. and S.N., Nathaniel Sieh, Victor Sieh, and Emmanuel Kamara. Cmplt. ¶¶ 68, 72, 111. Defendants Malloy and Mullen authorized and issued these quarantines despite knowing that the "[p]eople under quarantine [we]re not sick and not a risk to public health," as a DPH spokesman repeatedly stated in October 2014. Cmplt. ¶ 33 & Ex. A.

In authorizing the quarantines, issuing the quarantine orders, and carrying out the quarantines, Defendants Malloy and Mullen failed to use the least restrictive means to prevent Ebola infections; failed to base their decisions in science and evidence rather than politics and fear; failed to give quarantined people timely notice in writing, or ever; failed to affirmatively seek judicial review, where the state would bear the burden of establishing the necessity of quarantine by clear and convincing evidence; and failed to provide for the welfare and safety of those subject to quarantine (hereinafter "Defendants' quarantine policies and practice"). Cmplt. ¶41. Defendant Malloy has not rescinded the Emergency Declaration. *Id.* ¶ 176. According to the Connecticut Department of Public Health's website, the Emergency Declaration remains in

effect.  *Id.* ¶ 39.

Because Defendant Malloy's Emergency Declaration remains in effect, Defendants Malloy and Pino maintain their quarantine policies and practice and reserve the authority to issue scientifically unjustified and unlawful quarantine orders. *Id*. ¶ 40. Defendants Malloy and Pino therefore threaten to violate the rights of individuals in Connecticut through Defendants' quarantine policies and practice, including but not limited to:

(a) imposing quarantines without an individual assessment of its necessity;

(b) failing to notify quarantined persons of their rights by providing timely notice, and sometimes failing to provide written notice altogether;

(c) failing to provide quarantined persons a meaningful opportunity to challenge their quarantine;

(d) failing to initiate a judicial hearing prior to imposing a quarantine order and, where exigent circumstances do not permit a pre-quarantine hearing,  failing to initiate a hearing for judicial review within forty-eight hours of issuing any quarantine order, at which individuals could be represented by counsel, present opposing evidence and argument, and cross examine witnesses;

(e) failing to utilize the least restrictive means of preventing the transmission of Ebola by quarantining individuals when other forms of monitoring would have been sufficient;

(f) failing to provide adequate resources, including food, to quarantined persons; and

(g) rejecting guidance from the Centers for Disease Control and Prevention and the broader scientific community that quarantine is not necessary for Ebola-asymptomatic individuals.

*Id.* ¶ 175.

Because Defendants have imposed unlawful and scientifically unjustified quarantines in the past, including as to Class Plaintiffs Skrip, Mensah, and Sieh; because the risk of a future Ebola outbreak in West Africa is high; because Defendants maintain their quarantine policies and practices and reserve the authority to issue scientifically unjustified and unlawful quarantine orders pursuant to Defendant Malloy's unrescinded Emergency Declaration; and because it is highly likely that Defendants will again overreact to a future Ebola outbreak, Class Plaintiffs and other current and planned future travelers from Liberia, Guinea, and Sierra Leone are at real and immediate risk of being subject to an unlawful and scientifically unjustified quarantine, pursuant to Defendants' quarantine policies and practice. *Id.* ¶ 43.

**Class Plaintiffs Presently in West Africa Who Will Soon Return to Connecticut**

Defendants Malloy and Mullen previously subjected Plaintiff Skrip to an unlawful and scientifically unjustified quarantine, upon her return from Liberia in October 2014. *Id.* ¶ 72. On February 18, Plaintiff Laura Skrip will return to Connecticut after completing her present trip to Liberia, where she is helping to develop institutional and technological capacity to improve responses to public health crises. Declaration of Laura Skrip dated February 15, 2016 (hereafter "Skrip Decl."), at ¶ 4 & Ex. A.

On February 20, Plaintiffs Bishop Harmon Yalartai and Esther Yalartai will return to Connecticut from their present trip to Liberia, where they are attending the Annual Convention of the Faith Revival Temple Churches, conducting humanitarian work with Liberian schools, and visiting family members. Declaration of Esther Yalartai dated February 15, 2016 (hereafter "E. Yalartai Decl."), at ¶¶ 3-4 and Ex. A; Declaration of Bishop Harmon Yalartai dated February 15, 2016 (hereafter "Bishop Yalartai Decl."), at ¶¶ 3-4 & Ex. A.

All Class Plaintiffs currently in West Africa face a real and immediate threat of

Defendants Malloy and Pino subjecting them to an unlawful and scientifically unjustified quarantine, pursuant to Defendants' quarantine policies and practices, upon their return to Connecticut later this month. Skrip Decl., at ¶ 5; E. Yalartai Decl., at ¶ 5; Bishop Yalartai Decl., at ¶ 5.

**Class Plaintiffs Who Will Return to Connecticut After Future Travel to West Africa**

Plaintiff Liberian Community Association Of Connecticut ("LCAC") is a non-profit, non-partisan membership organization of more than 230 individuals headquartered in Hartford, Connecticut. Declaration of Flomo Freeman dated February 15, 2016 (hereafter "Freeman Decl."), at ¶ 2. LCAC's mission is to contribute to and enhance the social and economic development of the Liberian community in Connecticut, as well as to promote Liberian cultural heritage. *Id*. Members of LCAC regularly travel between Liberia and Connecticut for professional, religious, humanitarian, and personal reasons. *Id.* at ¶ 4. Many of LCAC's members intend to travel between Liberia and Connecticut, both in the coming months and regularly thereafter. *Id.* at ¶ 5.

Plaintiff Dr. Mary Jean O is a resident of Connecticut and a licensed emergency medicine physician currently working at the Robert Wood Johnson University Hospital and the Rutgers Robert Wood Johnson Medical School in New Brunswick, New Jersey. Declaration of Dr. Mary Jean O dated February 16, 2016 (hereafter "O Decl."), at ¶ 2. She has previously volunteered in Sierra Leone to provide medical assistance during the Ebola outbreak in fall 2014. *Id.* at ¶ 3. She intends to travel to West Africa to assist in the development of Liberia's healthcare infrastructure and to train local healthcare workers in her specialty of emergency medicine and disaster response. *Id.* at ¶ 4. Dr. O plans to immediately travel to West Africa in the event of a future Ebola outbreak. *Id.* at ¶ 5.

8

Plaintiffs Mensah-Sieh and Sieh, residents of Connecticut, plan to travel back to Liberia to visit friends and family. Declaration of Louise Mensah-Sieh dated February 16, 2016 (hereafter "Mensah-Sieh Decl."), at ¶ 3; Declaration of Nathaniel Sieh dated February 16, 2016 (hereafter "Sieh Decl."), at ¶ 3. Defendants Malloy and Mullen previously subjected Plaintiffs Louise Mensah-Sieh and Nathaniel Sieh to an unlawful and scientifically unjustified quarantine in October and November 2014. Mensah-Sieh Decl., at ¶ 2; Sieh Decl., at ¶ 2.

Esther and Bishop Harmon Yalartai plan to travel back to Liberia once or twice annually upon their return to Connecticut, to oversee the work of the Liberian Faith Revival Churches and provide humanitarian assistance. E. Yalartai Decl., at ¶ 6; Bishop Yalartai Decl., at ¶ 6.

In approximately April 2016, Plaintiff Skrip plans to start making regular trips to Liberia to continue her work in epidemiology, mathematical modeling, and health infrastructure. During this time, Skrip intends to maintain her domicile in Connecticut, where she is registered to vote, maintain a driver's license, and pay state taxes. Skrip Decl., at ¶ 6.

All Class Plaintiffs with planned future travel to West Africa face a real and immediate threat of Defendants Malloy and Pino subjecting them to an unlawful and scientifically unjustified quarantine, pursuant to Defendants' quarantine policies and practices, upon their return to Connecticut and after these future trips. Freeman Decl., at ¶ 8; O Decl., at ¶ 6; Mensah-Sieh Decl., at ¶ 4; Sieh Decl., at ¶ 4; E. Yalartai Decl., at ¶ 7; Bishop Yalartai Decl., at ¶ 7; Skrip Decl., at ¶ 7.

## ARGUMENT

### I.   Summary of Argument

Class Plaintiffs respectfully request that this Court certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2). The Class Plaintiffs seek to

represent a certified Plaintiff class consisting of all persons who will or intend to travel from Ebola-affected countries to Connecticut and are at risk of Defendants subjecting them to an unlawful and scientifically unjustified quarantine, pursuant to Defendants' quarantine policies and practice. Plaintiffs seek declaratory and injunctive relief for the class under 42 U.S.C. § 1983, the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, Title II of the ADA, and Section 504 of the Rehabilitation Act of 1973.

The Court should grant Plaintiffs' motion for class certification because the plaintiffs have met the requirements for class certification set forth in Rule 23. *See Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997) ("Before certifying a class, a district court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. . . . Furthermore, the party seeking certification must qualify under one of three criteria set forth in Rule 23(b).") (citations omitted). Furthermore, the Court should grant Plaintiffs' motion because civil rights class actions are an efficient, effective, and appropriate means for resolving matters that seek to vindicate class members' constitutional and statutory rights. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (calling civil rights cases the "prime example" of Rule 23(b)(2) suits).

## II.      Standards Applicable to Class Certification

There are four prerequisites to class certification: numerosity; commonality; typicality; and adequacy. Fed. R. Civ. P. 23(a). A plaintiff moving for class certification must "affirmatively demonstrate" that she meets each individual prerequisite by proving that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original); *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). A plaintiff must show that she satisfies

each Rule 23(a) requirement by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

Upon a plaintiff's satisfaction of the four prerequisites, the court "must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)." *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008). A party seeking class certification on a claim for injunctive relief must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## III.    The Proposed Class Satisfies all Rule 23 Prerequisites for a Class Action

The Class Plaintiffs and putative class members satisfy all relevant class action prerequisites under Fed. R. Civ. P. 23(a), and the proposed class action satisfies the standard for final injunctive relief or corresponding declaratory relief. *Id.* 23(b)(2). Because it satisfies all requirements under Rules 23(a) and (b)(2), the Court should certify the class.

### A.    The Proposed Class is Definite and Ascertainable but so Numerous that Joinder of All Members is Impracticable

The district court must certify a class if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder of all parties need not be impossible. "[T]he difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 504 F.3d 229, 244–45 (2d Cir. 2007).

The contours of the numerosity requirement vary depending on the specific facts of each case, as the requirement "imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980); *see also Pennsylvania Pub. Sch.*

11

*Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (stating that the "numerosity inquiry is not strictly mathematical but must take into account the context of the particular case"); *Novella v. Westchester Cty.*, 661 F.3d 128, 143-44 (2d Cir. 2011) ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.") (internal citations omitted). District courts within the Second Circuit have generally held that the requirement is satisfied when the class comprises 40 or more members and is not satisfied when the class comprises 21 or fewer members. *See Pennsylvania Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 120; *Novella v. Westchester Cty.*, 661 F.3d at 144.

The current class satisfies this standard for numerosity because the class of individuals currently traveling or who intend to travel from West Africa to Connecticut is significantly greater than forty. *See, e.g.*, Freeman Decl., at ¶ 2 (LCAC membership includes more than 230 Liberian immigrants with ties to West Africa, of whom approximately twenty, or nearly ten percent, travel to Liberia annually); *id.* at 5 (there are approximately 1000 Liberian residents of Connecticut, who travel to Liberia at approximately the same annual rate as LCAC members); Wishnie Decl., at ¶ 13 & Ex. C (U.S. census data show that there are 8,351 individuals residing in Connecticut who were born in western African, including 916 individuals born in Liberia and 203 individuals born in Sierra Leone).

In addition to the unofficial forty-person threshold, there are five factors that courts within the Second Circuit weigh when assessing the numerosity requirement: "(i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pennsylvania Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 120 (citation omitted). The current action satisfies these five factors.

12

First, judicial consideration of the Class Plaintiffs' claims for injunctive relief through the class action procedure will preserve judicial resources. Without the class action procedure, the courts would have to consider each class member's claim independently every time they travel to Connecticut. Furthermore, members of the class are so numerous as to render joinder impracticable, as set forth above. Second, the class is geographically dispersed across both the state of Connecticut and, due to current and planned travel, the world. Freeman Decl., at ¶¶ 4-5; E. Yalartai Decl., at ¶ 3; Bishop Yalartai Decl., at ¶ 3; Skrip Decl., at ¶ 4. Third, the financial resources of the class members, who include recent immigrants, graduate students, and clergy are not so great so as to render joinder practicable. Freeman Decl. at ¶ 10; E. Yalartai Decl., at ¶ 9; Bishop Yalartai Decl., at ¶ 9; Skrip Decl., at ¶ 9. Without the class action procedure, many members of the class would not have the resources to bring an individual suit. Fourth, class members would be unable to bring suit separately because they generally lack legal sophistication, *cf. Pennsylvania Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 120 (upholding denial of class certification where proposed class composed of sophisticated investors), and their injunctive claims do not have financial significance that would incentivize securing representation. *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 115-16 (S.D.N.Y. 1998) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quotations omitted)). Fifth, the request for injunctive relief for the class will involve future class members.

Because the proposed class satisfies Rule 23(a) numerosity and these five factors, a class action is the most appropriate avenue for the protection of the class members' constitutional and statutory rights.

**B.      Questions of Law or Fact and Their Answers are Common to the Class**

The proposed class satisfies the commonality requirement of Rule 23(a)(2). A plaintiff seeking to meet the second requirement for class certification must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In addition to requiring that plaintiffs seeking class certification suffer the same harms and share a "common question," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2556, the Supreme Court explained that this question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551.

The proposed class presents common questions of law and fact, resolution of which will not require individualized determinations based on any plaintiff's particular circumstances. Such common questions of law and fact include but are not limited to:

(a)      whether Defendants Malloy and Pino threaten to engage in a policy, practice and/or custom of quarantining individuals without a judicially-approved warrant or probable cause and in the absence of reasonable, individualized, and scientifically sound proof, in violation of the Fourth Amendment of the Constitution;

(b)      whether Defendants Malloy and Pino could engage in a less restrictive means of protecting public health than quarantining individuals when reasonable, individualized, and scientifically sound proof does not indicate that a quarantine is necessary, as required by the Fourteenth Amendment of the Constitution;

(c)      whether Defendants Malloy and Pino threaten to engage in a policy, practice and/or custom of quarantining individuals without individually assessing those subject to quarantine, without providing adequate and timely notification to those individuals of their

14

rights, without ensuring state-initiated judicial review before or within forty-eight hours of imposing quarantine, without providing essential supplies, and without other procedural protections required by the Fourteenth Amendment of the Constitution;

(d)     whether Defendants Malloy and Pino threaten to engage in a policy, practice and/or custom of depriving individuals of their fundamental rights, including freedom of association, freedom from restraint, and freedom to travel by quarantining individuals in the absence of reasonable, individualized, and scientifically sound proof required by the Fourteenth Amendment of the Constitution; and

(e)     and whether Defendants Malloy and Pino threaten to engage in a policy, practice and/or custom of quarantining individuals that subjects them to discrimination on the basis of perceived disability in contravention of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

These common questions are amenable to classwide resolution through "common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551. (emphasis in original), (citation omitted). The Class Plaintiffs and members of the class they propose to represent seek declaratory and injunctive relief to prevent Defendants from inflicting unnecessary harm on the class through Defendant's policy, practice, and/or custom of quarantining individuals unlawfully and without medical justification. An order requiring Defendants not to take this action would resolve the Class Plaintiffs' claims and those of the putative class members for declaratory and injunctive relief. Furthermore, a determination that Defendants threaten to engage in a policy, practice and/or custom of quarantine that violates the rights of members of the class will, with a common answer, entirely resolve the questions of the class.

C.      **The Class Plaintiffs' Claims are Typical of the Claims of the Class**

The Class Plaintiffs' claims are typical of the putative class, satisfying Rule 23(a)(3). Like the other members of the class, the Defendants' policy, practice and/or custom of quarantining individuals without scientific justification and in violation of due process, the Fourth Amendment, and disability discrimination statutes threatens to harm the Class Plaintiffs upon their return to Connecticut.

The Rule 23(a)(3) prerequisite for class actions requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement "is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). To satisfy the typicality requirement, "the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted).

The Class Plaintiffs' claims are typical of those of the class because the injuries of both the Plaintiffs and the putative class members "derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d at 377. Indeed, the same practice or course of conduct gives rise to the claims of class members: Defendants' policy, practice and/or custom of quarantining individuals without necessity and in violation of procedural requirements threatens to harm the Class Plaintiffs and other members of the proposed class upon their return to Connecticut from travel. Furthermore, the legal theories under which the Class Plaintiffs seek

declaratory and injunctive relief are the same or similar to those upon which all members of the class will rely, and the harms suffered by the Class Plaintiffs are typical of the harms suffered by the class members.

While individual members of the class may vary in their risk or exposure to Ebola, the Defendants' policy, practice, and/or custom toward members of the class is uniform. These minor differences, then, cannot defeat 23(a)(3) typicality, as the same practice by Defendants' gives rise to the claims of both the Class Plaintiffs and other members of the class.

### D.    The Class Plaintiffs Will Fairly and Adequately Protect the Interest of the Class Members

To satisfy the fourth and final requirement of 23(a), a plaintiff must show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation. The focus is on uncovering conflicts of interest between named parties and the class they seek to represent." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal citations and quotation marks omitted). The proposed class satisfies both elements of 23(a)(4).

The Class Plaintiffs' interests do not conflict with other members of the class. Instead, the Class Plaintiffs' interests are exactly the same as those of the class: not to be subject to a scientifically unjustified and unlawful quarantine upon completion of travel to West Africa and return to Connecticut. Freeman Decl., at ¶ 9; O Decl., at ¶ 7; Mensah-Sieh Decl., at ¶ 5; Sieh Decl., at ¶ 5; E. Yalartai Decl., at ¶ 8; Bishop Yalartai Decl., at ¶ 8; Skrip Decl., at ¶ 8. The legal theories under which the Class Plaintiffs seek declaratory and injunctive relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the Class

Plaintiffs are typical of the harms suffered by the class members.

With regard to the second element of Rule 23(a)(4) adequacy, the Class Plaintiffs have retained adequate counsel to represent the class. Counsel are expert in complex federal civil rights litigation, immigration and constitutional law, and health law. They have experience as lead counsel in Rule 23 class actions. Wishnie Decl., at ¶ 4. Counsel have the motivation and resources to vigorously litigate this case. Moreover, as explained below, counsel satisfy the requirements of Rule 23(g) for appointment as class counsel. Accordingly, the adequacy requirements of Rule 23(a)(4) are satisfied.

## IV.     Class Certification is Appropriate Pursuant to Fed. R. Civ. P. 23(b)(2).

Upon satisfying the four 23(a) prerequisites for a class action, the Court "must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)." *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008). The Court should grant certification to the class pursuant to Rule 23(b)(2) because "a single injunction or declaratory judgment would provide relief to each member of the class" against Defendants' policy, practice, and/or custom of quarantines. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. at 2557.

Certifying the class is particularly appropriate in this case because it is a civil rights suit. Civil rights suits seeking to enjoin parties from engaging in class-based discrimination are a common form of Rule 23(b)(2) suit. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (calling civil rights cases the "prime example" of Rule 23(b)(2) suits). Such suits are best addressed at systemic level, with comprehensive injunctive relief as is required by Rule 23(b)(2).

Furthermore, a (b)(2) class action may be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R.

18

Civ. P. 23(b)(2). As stated by the Supreme Court in *Wal-Mart*, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."[1] 131 S.Ct. at 2557. *Wal-Mart* provides no barrier here: the proposed class is sufficiently indivisible for the purposes of Rule 23(b)(2).

In this case, the Defendants have enacted a policy, practice, and/or custom of unlawful and scientifically unjustified quarantines pursuant Defendant Malloy's Emergency Declaration and C.G.S.A. §19a-131 that apply generally to the class. A decision by the Court to enjoin the Defendants' policy, practice, and/or custom of quarantines that are unlawful and without scientific justification will uniformly provide relief to the Class Plaintiffs and all class members. Similarly, a decision by the Court to provide a declaratory remedy with regard to the rights of the Class Plaintiffs also will uniformly apply to all class members. Therefore, it is not only possible to issue an injunction that resolves the Class Plaintiffs' claims, it is the efficient approach to litigating this action.

## V.   The Court Should Appoint Undersigned Counsel As Class Counsel.

Under Rule 23(g)(1), "a court that certifies a class must appoint class counsel." In appointing class counsel, the court must consider four factors under Rule 23(g)(1)(A):

> i.  the work counsel has done in identifying or investigating potential claims in the action;

---

[1] Indeed, in Rule 23(b)(2) class actions where the relief sought is injunctive and "therefore does not require distribution to the class" but rather "defendants are legally obligated to comply" with any relief the court orders, "it is usually unnecessary to define with precision the persons entitled to enforce compliance. Therefore, it is not clear that the implied requirements of definiteness should apply to Rule 23(b)(2) class actions at all." William B. Rubenstein, *Newberg on Class Actions*, § 3:7 (internal quotation marks omitted).

ii.  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

iii. counsel's knowledge of the applicable law; and

iv. the resources that counsel will commit to representing the class;

All of these Rule 23(g)(1) factors militate in favor of appointing the undersigned as class counsel. The Class Plaintiffs' attorneys at the Jerome N. Frank Legal Services Organization ("LSO") are qualified, experienced, and have the resources necessary to conduct the litigation. The undersigned counsel and LSO are thoroughly familiar with the applicable law and have extensive experience in handling civil rights, class actions, health law, and immigration law. Wishnie Decl., at ¶¶ 2-8; *Reid v. Donelan*, 297 F.R.D. 185, 194 (D. Mass. 2014) (appointing Wishnie and LSO class counsel to represent class of immigration detainees). In addition, attorneys have expended the time and effort necessary to identify the class, and have already done substantial work investigating and identifying the claims of the plaintiff class and to maintaining this litigation. Wishnie Decl., ¶ 9.

Fed. R. Civ. P. 23(g)(4) states that "[c]lass counsel must fairly and adequately represent the interests of the class." *Id*. This factor, too, favors appointing the undersigned as class counsel. Counsel do not have any conflicts of interest with class members and are committed to the needs and interests of the class. Counsel do not anticipate any reason that other class members would dispute the adequacy of LSO's representation. Wishnie Decl., ¶10.

Because the undersigned counsel satisfy Rule 23(g)(1) and 23(g)(4), the Court should appoint the undersigned as class counsel.

## VI.    In the Alternative, This Court Should Order Pre-Certification Discovery

In the event that the Court concludes that the Class Plaintiffs have made an insufficient showing as to any requirement for class certification pursuant to Rule 23, then Plaintiffs respectfully request leave to take pre-certification discovery on whichever requirement the Court

considers unsatisfied. *See Philip Morris Inc. v. Natl. Asbestos Workers Med. Fund*, 214 F.3d 132, 135 (2d Cir. 2000) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied.") (internal quotation omitted); *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.1982).

For instance, if the Court concludes that Plaintiffs have failed to demonstrate numerosity as required by Rule 23(a)(1), then they request leave to take discovery regarding the number of persons annually traveling between Connecticut and Liberia, Sierra Leone, and Ghana. Or, by way of another example, if the Court were to conclude that Plaintiffs have failed to adequately demonstrate commonality or typicality, then they request leave to take discovery regarding Defendants' quarantine policies and practices so as better to demonstrate commonality or typicality.

## CONCLUSION

Class Plaintiffs represent a unified proposed class of current and planned future travelers who intend to return to Connecticut from Liberia, Guinea, or Sierra Leone. The proposed class members are all affected by the same policies and practices imposed and improperly applied by Defendants. Class Plaintiffs have met their burden to satisfy the requirements of Rule 23(a) and (b)(2), and the Court should therefore certify Plaintiffs' proposed class.

Dated: February 16, 2016
New Haven, Connecticut

Respectfully Submitted,

BY: /s/ Michael J. Wishnie

Alexandra Brodsky, Law Student Intern

Elizabeth Deutsch, Law Student Intern
Kyle Edwards, Law Student Intern
Kyle Fees, Law Student Intern
Mekela Panditharatne, Law Student Intern
Emma Roth, Law Student Intern
Muneer I. Ahmad, No. ct28109
Amy Kapczynski, No. ct29965
Michael J. Wishnie, No. ct27221
JEROME N. FRANK LEGAL SERVICES
ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, Connecticut 06520
Phone: (203) 432-4800

*Counsel for Plaintiffs*